**IN THE**
# United States District Court
# Eastern District of Pennsylvania
## CIVIL ACTION - ELECTION LAW

| | |
|---|---|
| **ROBERT MANCINI, PRO SE,**<br>Authorized Representative<br>and<br>**JOY SCHWARTZ, PRO SE**<br>Candidate for Delaware County Council<br>and<br>**GREGORY STENSTROM, PRO SE**<br>Authorized Representative<br>and<br>**LEAH HOOPES, PRO SE**<br>Authorized Representative<br>**Plaintiffs,**<br><br>v.<br><br>**DELAWARE COUNTY, PA,**<br>and<br>**DELAWARE COUNTY BOARD OF ELECTIONS**<br>**Defendants.** | Case No. _____<br><br><br>CIVIL ACTION: VIOLATION OF FEDERAL ELECTION LAW<br><br>COMPLAINT / PETITION<br><br><br>INJUNCTION REQUESTED<br>DISCOVERY REQUESTED<br>ORAL ARGUMENTS REQUESTED<br>JURY TRIAL REQUESTED |

## **COMPLAINT**

Election machines used to process and tabulate votes in Delaware County, Pennsylvania, are not tested, certified, or operated in compliance with federal law. Defendants' recalcitrant, willful violations of 52 USC 21081(a)(5) "*ERROR RATES*" provide a critical vector for massive election fraud. Plaintiffs have hard, physical evidence, witness affidavits, court testimony, and admissions by public officials, that Defendants have, in fact, been committing election fraud with the help of uncertified election machines that enable that election fraud, depriving Plaintiffs, the People of Delaware County, and the Commonwealth of Pennsylvania, of their constitutional rights for honest and fair elections and requires immediate federal court intervention.

000001

## BASIS OF JURISDICTION

1. Federal question regarding 52 USC 21081(a)(5): "*Error Rates. The error rate of the voting system in counting ballots (determined by taking into account only those errors which are attributable to the voting system and not attributable to an act of the voter) shall comply with the error rate standards established under section 3.2.1 of the voting systems standards issued by the <u>Federal Election Commission</u>…*"

2. Violation of Federal Laws including the U.S. Constitution's Fourteenth Amendment's Equal Protection Clause, The Supremacy Clause (Article VI, Clause 2), the Civil Rights Act and supporting U.S. Supreme Court case law.

3. This Court also has jurisdiction over this action pursuant to 28 USC section 1331 as it presents federal questions under the American Public Administration (APA), Help America Vote Act (HAVA), and Federal Advisory Committee Act (FACA), which are significant components of federal legislation that have shaped the electoral process in the United States.

4. This Court has authority to issue declaratory and injunctive relief under 5 USC section 706.

5. "Erie Doctrine" objections do not apply as the present issue is solely a matter of federally mandated law, not a matter of diversity jurisdiction, procedural discretion, or impingement of State or local municipal rights.

6. While Defendants are at County level in the subject case, with their large population Delaware County, Pennsylvania's refusal to comply with verification of election machines, logic and accuracy testing, recounts, recanvassing, and disclosure of public records, to ensure safe and honest elections substantially impacts electoral college outcomes for Pennsylvania and is, therefore, of critical national (federal) interest to the Republic.

## STATEMENT OF CLAIM

7. According to *52 USC 21081(a)(5),* a State shall adopt voting system guidelines and processes that are consistent with the requirements of section *21081* of this title.

8. According to *The Supremacy Clause of the U. S. Constitution*, a State shall not violate

000002

Federal Laws.

9.  The Tenth Amendment *"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."* In this case the Plaintiffs and People have been repeatedly denied their rights to address their grievances, challenge the unlawful means in which Defendants conducted elections and used election machines, or examine public election records that would confirm Defendants lawlessness.

10. Events giving rise to the subject complaint occurred in Delaware County, and Delaware County Court of Common Pleas ("Delaware CCP") cases *Delaware County v Robert Mancini* (CV-2023-000307, CV-2023-001509, CV-2023-002153, CV-2023-002255); and *Robert Mancini v Delaware County* (CV-2023-008767); *Missino, Stenstrom, Hoopes et al v. Delaware County et al* (CV-2022-008091); *Schwartz, Stenstrom, Hoopes, Rumley v Delaware County et al* (258 MD 2023 (CommCt of Pennsylvania) and CV-2023-006012 (Delaware CCP)); and *Schwartz, Stenstrom, Hoopes, Rumley v Delaware County et al* (1497-1510 CD 2023 Commonwealth Court of Pennsylvania), and *Stenstrom v Delaware County* AP 2023-1326 (Consolidated appeal of Office of Open Records ("OOR") Dkt. Nos. AP 2023-1327, AP 2023-1328, AP 2023-1329, AP 2023-1330, and AP 2023-1332).

11. In all of the above cases, for which the crux of Pro Se citizen Plaintiffs' complaints were Defendants' refusal to comply with federal and state laws requiring certification and testing of election machines, and conduct of elections, the Delaware County Court of Common Pleas reversed all PA Office of Open Records ("OOR"). Orders to release public election records; denied election recounts and examination of the ballot boxes; denied requests for litigation holds to preserve election records (which Defendants subsequently destroyed or spoliated), and have refused to hear, respond to, or adjudicate *Missino et al v Delaware County,* regarding election machine certification and logic and accuracy testing, and observable canvassing, for over **580 days**.

12. The Delaware County Court of Common Pleas has quashed or thwarted dozens of Delaware County citizen Plaintiffs' (with standing) litigative attempts, since November 2020, to

remedy blatant violations of criminal law and election law that was <u>admitted</u> to by the Defendants, for which Plaintiffs have also provided hard physical evidence, and elicited sworn testimony from Defendants in hearings, of said unlawful acts and crimes by the Defendants.

13. Despite both Plaintiffs, and PA OOR orders, citing black letter federal and state statutes, and US Supreme Court case law as precedents, the Delaware County Court of Common Pleas has contrarily and repeatedly cited self-referential, local Delaware County Court of Common Pleas ("CCP") rulings as prevailing precedents of law, to wit Judge Angelos' order that:

> *"Pursuant to the coordinate jurisdiction doctrine, this Court applies the precedent established by the <u>Honorable Barry C. Dozor, Judge of the Court of Common Pleas in Delaware County</u>, in Joshua Moneghan v. The Delaware County, Delaware County CCP Docket CV-2022-005757 and the <u>Honorable Kelly D. Eckel, Judge of the Court of Common Pleas of Delaware County</u> in County of Delaware v. Patricia Bleasdale, Delaware County CCP Docket CV- 2022-009473 to the legal issue presented in these conducted proceedings."*

14. Specifically, the local Delaware County CCP has repeatedly affirmed that the Defendants' bureaucratically appointed Delaware County Board of Elections, and the appointed "Director of Elections," James Allen, have complete and utter, final authority in deciding whatever they please with regards to conforming to federal and state election laws and the release of public election records, and they have continuously violated those laws.

15. Plaintiffs' attempts to address these issues in the Commonwealth Court of Pennsylvania, which has both original and appellate jurisdiction in matters of election law, have similarly been thwarted primarily through procedural, anonymous "per curiam" orders referring Plaintiffs back to the Delaware County CCP.

16. In the case of *Hoopes & Stenstrom v Secretary of the Commonwealth Boockvar et al* (876 & 877 CD 2022), which provides video, photo, audio, texts and emails substantiating massive election fraud as a result of Defendants' criminal violations of election law, The

Commonwealth Court has allowed the case to languish unadjudicated for **958 days**.

17. Plaintiffs Stenstrom and Hoopes, as former co defendants with President Trump, in *Savage v Trump et al* (CV-2020-007523 Philadelphia CCP) successfully defended themselves Pro Se over an **860 day** discovery and pre-trial period during which not a single allegation of massive election fraud, in which uncertified and untested election machines were a key component, was able to be refuted.

18. Hence, it is a matter of both public and judicial record that the subject complaint before the Honorable Court is not a mere "technical" matter to be left to local courts, but of critical national interest that cannot be similarly allowed to be strategically delayed and languish unadjudicated with the November 2024 presidential election coming fast upon the nation.

19. Pro Se Plaintiffs come before the federal court in a state of exasperation and financial exhaustion having been repeatedly strategically mooted, and denied requested oral arguments, hearings, and jury trials to address their grievances, by the Commonwealth Court of Pennsylvania, Delaware County Court of Common Pleas, and Defendants, who have administratively, procedurally, and petulantly dismissed them, and insisted that they are above the laws of the Commonwealth of Pennsylvania, and the United States Constitution and the laws of the United States of America in violation of the public trust.

20. Plaintiffs request the Honorable Federal Courts' intervention and oversight in ensuring Defendants comply with federal and state laws regarding required certification of election machines and logic and accuracy testing for the forthcoming November 2024 presidential election, and adjudication and accountability for the violations of law that have already resulted in massive election fraud in previous national elections.

21. Should the Honorable Federal Court hear and grant the requested relief that election machines cannot be used if they cannot be assured that election fraud can be averted in the forthcoming November 2024 election, there is a superior alternative. Hand counted tabulations at the precinct level were used successfully for over two hundred (200) years in the United States of America.

22. In summary, the Defendants contemptuous violations of federal and state election laws and refusal to test and verify election machines in accordance with law, while providing a criminally false attestation to the contrary, provides a continuing vector for MASSIVE election fraud, that Defendants have already, in fact, facilitated and committed in previous elections, and must be addressed by the Honorable Federal Court of the Eastern District of Pennsylvania.

## FACTS

23. In regard to *Delaware County v Robert Mancini* (CV-2023-000307, CV-2023-001509, CV-2023-002153, CV-2023-002255), Plaintiff Mancini had successfully petitioned the Pennsylvania Office of Open Records ("PA OOR") in cases AP 2022-2667, AP 2023-0133, AP 2023-0066, and AP 2023-0104, for public election records pertaining to the November 2022 national elections for the US Senate and gubernatorial election for the Commonwealth of Pennsylvania. (See Exhibits A, B, and C).

24. <u>The records requested by Pro Se Plaintiff Mancini were specific to election machine certifications and logic and accuracy testing required to ensure honest and fair elections and access to these records was granted by the PA OOR</u>.

25. Defendant Delaware County unsuccessfully appealed, or failed to file timely appeals, to the above PA OOR Orders, and subsequently entered into a one-year litigative dogfight in the Delaware County Court of Common Pleas to reverse the affirmed PA OOR Orders.

26. Images of the PA OOR dispositions of Plaintiff Mancini public records requests are included below for brevity, with the key element being that all were reversed by the Delaware County CCP.

| Docket # | Issue Date | Title | Description | County | Status |
|---|---|---|---|---|---|
| 2022-2667 | 12/13/2022 | Robert Mancini v. Delaware County | Request sought records associated with machines used to count votes in the 2022 election. Records qualify as "other documents and records." Agency must provide responsive records subject to the access provisions in the Election Code. Granted. | Delaware | Reversed by Common Pleas |



| Docket # | Issue Date | Title | Description | County | Status |
|---|---|---|---|---|---|
| 2023-0133 | 02/17/2023 | Robert Mancini v. Delaware County | Request sought a numerical list of voters used to determine the number of voters who cast ballots in a specific precinct. The County argues only that the request needs to go through the Elections Office utilizing the Election Code. Granted subject to the Election Code. | Delaware | Reversed by Common Pleas |

| Docket # | Issue Date | Title | Description | County | Status |
|---|---|---|---|---|---|
| 2023-0066 | 02/08/2023 | Robert Mancini v. Delaware County | Requests sought ballot records for the 2022 election. Agency demonstrated that the records are subject to the provisions of the Election Code. Granted. | Delaware | Reversed by Common Pleas |

| Docket # | Issue Date | Title | Description | County | Status |
|---|---|---|---|---|---|
| 2023-0104 | 02/08/2023 | Robert Mancini v. Delaware County | Consolidated with 2023-0066. | Delaware | Reversed by Common Pleas |

27. These cases plainly show in findings, admissions, and subsequent hearing transcripts that Defendants did not comply with 52 USC 21081(a)(5) *Error Rate* requirements, have done so on a continuing basis, and clearly intend to continue to not comply with law.

28. The approximate date and time of events giving rise to this complaint occurred in Delaware County which used electronic voting systems not compliant with 52 USC 21081(a)(5) in November 2020, May 2021, November 2021, May 2022, November 2022, May 2023, November 2023, April 2024, and indications show intent to do so again in November 2024.

29. On a witness stand on May 24, 2023, James P. Allen, Director of Elections for Delaware County (Hereinafter, "Allen"), admitted that Defendants did not do a secure-build validation, also known as "hash-testing."

30. According to the Pennsylvania Department of State's Certification for Use of Election Machines, jurisdictions must perform a secure-build validation ("hash testing') as part of the electronic preparation activities and post-election canvassing.

31. Without secure-build validation/hash testing there is no guarantee that election machines software actually being used in the machines matches the software that was tested and approved by the Pennsylvania Department of State.

32. Without secure-build validation ("hash testing") and post canvass activities, there is no way to prevent or know if anyone has tampered with the system, and / or modified election

results.

33. Failure to perform secure-build validation ("hash testing") prevents Delaware County, Pennsylvania's voting systems from having Election Assistance Commission ("EAC") Certification.

34. Defendant Delaware County used Hart version 2.3.4 prior to February 16, 2023, and thereafter (and currently) uses Hart Verity Voting 2.7 Electronic Voters System (Hereinafter, "Hart").

35. Without an EAC Certification, Defendant cannot use the Hart system in an election because the EAC never tested Delaware County's Hart 2.3.4 and 2.7 for compliance with federal 52 21081(a)(5) statutes.

36. While Hart attested to accuracy, Defendants cannot use that attestation without independent accuracy testing (by Defendants), as it violates the Hart Master Agreement paragraph 12.1 which states that *"Customer acknowledges it has independently determined that the Products purchased under this agreement meet its requirements."*

37. Secure-build validation/hash testing is a crucial component of Logic and Accuracy testing.

38. Defendants' named agent and Director of Elections, Allen filed an attestation with the Pennsylvania Department of State via email on April 25, 2023, stating that the Logic and Accuracy testing was performed as required for the November 8, 2022, Federal Election (See Exhibit D).

39. During a May 24, 2023, hearing, when Delaware County Director of Elections Allen was asked by Pro Se Plaintiff Robert Mancini, *"Did Delaware County hash test the machines prior to the November 2022 election,"* to which Allen's sworn testimony response was:

    a. *"It's not required. No."*

40. Therefore, Defendants' agent, James Allen, falsified the April 25, 2023, attestation he filed with the Pennsylvania Department of State in violation of 18 Pa. C.S. 4911.

000008

41. The Hart Verity Voting System as used by Delaware County, Pennsylvania is not in compliance with 52 USC 21081(a)(5).

42. 52 USC 21081(a)(5) states that the voting systems *"shall comply with the error rate standard established under section 3.2.1 of the voters system standard issued by the Federal Election Commission (FEC) in effect on October 29th, 2002."*

43. Section 3.2.1 "Accuracy Requirements" states the following:

> *"Voting system accuracy addresses the accuracy of data for each of the individually ballot positions that could be selected by a voter, including the positions that are not selected. For a voting system, accuracy is defined as the ability of the system to capture, record, store, consolidate and report the specific selections and absence of selections, made by the voter for each ballot position without error. Required accuracy is defined in terms of an error rate that for testing purposes represents the maximum number of errors allowed while processing a specified volume of data. This rate is set at a sufficiently stringent level such that the likelihood of voting system errors affecting the outcome of an election is exceptionally remote even in the closest of elections.*

> ***The error rate is defined using a convention that recognizes differences in how vote data is processed by different types of voting systems.*** *Paper-based and DRE systems have different processing steps. Some differences also exist between precinct count and central count systems. Therefore, the acceptable error rate applies separately and distinctly to each of the following functions:*

> *a. For all paper-based systems:*

> *1) Scanning ballot positions on paper ballots to detect selections for individual candidates and contests;*

> *2) Conversion of selections detected on paper ballots into digital data;*

> *b. For all DRE systems:*

000009

> 1)  *Recording the voter selections of candidates and contests into voting data storage; and*
>
> 2)  *Independently from voting data storage, recording voter selections of candidates and contests into ballot image storage.*
>
> c.  *For precinct-count systems (paper-based and DRE):*
>
> *Consolidation of vote selection data from multiple precinct-based systems to generate jurisdiction-wide vote counts, including storage and reporting of the consolidated vote data; and*
>
> d.  *For central-count systems (paper-based and DRE):*
>
> *Consolidation of vote selection data from multiple counting devices to generate jurisdiction-wide vote counts, including storage and reporting of the consolidated vote data.*

*For testing purposes, the acceptable error rate is defined using two parameters: the desired error rate to be achieved, and the maximum error rate that should be accepted by the test process.*

***For each processing function indicated above, the system shall achieve a target error rate of no more than one in 10,000,000 (ten million) ballot positions, with a maximum acceptable error rate in the test process of one in 500,000 (five-hundred thousand) ballot positions****."*

44. The EAC that oversees all electronic voting systems was established by The Help America Act (HAVA).

45. On August 4, 2023, the EAC issued guidance on the requirement *"minimum ballot position,"* reaffirming and discussing the requirement for a minimum of 10,000,000 (ten million) ballot positions that must be read by the voting system and tabulated accurately.

46. Under Pennsylvania Law a ballot is defined in Pennsylvania Act 77 Section 1002, as

000010

presented in the image below

```
    Section 1002.  Form of Official Primary Ballot.--(a)  At
primaries separate official ballots shall be prepared for each
party which shall be in substantially the following form:
    Official............................... Primary Ballot.
                        (Name of Party)
........District,........Ward, City of........................,
County of..............................., State of Pennsylvania
........Primary election held on the.....day of........., 19...
    Make a cross (X) or check (ˇŠ) in the square to the right of
each candidate for whom you wish to vote. If you desire to vote
for a person whose name is not on the ballot, write[, print or
paste] or stamp his name in the blank space provided for that
purpose. Mark ballot only in black lead pencil, indelible pencil
or blue, black or blue-black ink in fountain pen or ball point
pen. Use the same pencil or pen for all markings you place on the
ballot.
                    President of the United States.
                            (Vote for one)
John Doe
Richard Roe
John Stiles
                        United States Senator.
                            (Vote for one)
John Doe
Richard Roe
John Stiles
                             Governor.
                            (Vote for one)
John Doe
Richard Roe
John Stiles
             Representative in Congress.....District.
                            (Vote for one)
John Doe
Richard Roe
John Stiles
             Delegates at Large to National Convention.
                            (Vote for.....)
John Doe
   (Committed to Jeremiah Smith)
John Stiles
   (Uncommitted)
          Delegate to National Convention.....District.
                            (Vote for.....)
John Doe
   (Committed to Jeremiah Smith)
John Stiles
   (Uncommitted)
          Senator in the General Assembly.....District.
                            (Vote for one)
John Doe
Richard Roe
John Stiles
                    Member of State Committee.
                            (Vote for one)
John Doe
Richard Roe
John Stiles
                        Party Committeemen.
                            (Vote for.....)
John Doe
Richard Roe
John Stiles
```

*ACT 77 Section 1002 Ballot Definition*

000011

47. The balance of Pennsylvania Act 77 Section 1002 is as follows:

> (b)  On the back of each ballot shall be printed in prominent type the words "OFFICIAL PRIMARY BALLOT OF ........PARTY FOR" followed by the designation of the election district for which it is prepared, the date of the primary and the facsimile signatures of the members of the county board of elections. The names of candidates shall in all cases be arranged under the title of the office for which they are candidates and be printed thereunder in the order determined by the casting of lots as provided by this act. Under the title of such offices where more than one candidate is to be voted for, shall be printed "Vote for not more than ........" (the blank space to indicate the number of candidates to be voted for the particular office.) At the right of the name of each candidate there shall be a square of sufficient size for the convenient insertion of a cross (x) or check (ˆš) mark. There shall be left at the end of the list of candidates for each office (or under the title of the office itself in case there be no candidates who have filed nomination petitions therefor) as many blank spaces as there are persons to be voted for, for such office, in which space the elector may insert, **by writing or stamping**, the name of any person whose name is not printed on the ballot as a candidate for such office. Opposite or under the name of each candidate, except candidates for the office of President of the United States and candidates for delegate or alternate delegate to a National Party Convention, who is to be voted for by the electors of more than one county, shall be printed the name of the county in which such candidate resides; and opposite or under the name of each candidate except candidates for delegate or alternate delegate to a National Party Convention who is to be voted for by the electors of an entire county or any congressional, senatorial or representative district within the county, shall be printed the name of the city, borough, township or ward, as the case may be, in which such candidate resides.

000012

48. Without secure-build validation/hash testing and post canvas activities, voting machine systems can be tampered with.

49. The Pennsylvania 25 P.S. Election Code § 1111 specifically states that the "custodian and deputy custodians of voting machines" are solely responsible for the certification of election machines and sworn attestation of certifications and testing that are provided to the state.

50. The Defendants (and other counties in Pennsylvania) (and the nation)), have created political officer "Directors of Elections" and like fictional roles with no statutory authority for the purpose of subverting and violating federal and state election laws, Pennsylvania Act 77, unilateral adjudication of open public records laws for election records, and unlawfully conduct election machine certifications, logic and accuracy testing, and unlawfully sign attestations for the state.

51. 25 P.S. § 1111(e) states "*No member of the county election board, nor custodian, nor other employe of the county election board, shall, in any way, prevent free access to and examination of all voting machines, which are to be used at the election, by any of the duly appointed representatives aforesaid; and the county election board and their employes shall afford to each such representative every facility for the examination of all registering counters, protective counters, and public counters of each and every voting machine.*"

52. Defendants' selected Marianne Jackson as "Interim Director of Elections" to run the November 2020 federal election in Delaware County, Pennsylvania, for $20,000 per month with full knowledge that Jackson had absolutely no experience in elections nor any other related experience. Jackson admitted as much, and stated her only experience in elections was as a voter.

53. Marianne Jackson's role was administrative as evidenced by her not signing sworn attestation of certification and logic and accuracy testing in the November 2020 election.

54. Defendants then hired Director of Elections Allen shortly after the November 2020 elections, who was previously the public Communications Officer for elections in Cook County (Chicago), Illinois, who is now providing (or not providing) false attestations of

election machine certifications and logic and accuracy testing since.

55. Defendants hired James Savage (hereinafter "Savage") for the statutory role of <u>custodian of election machines</u> shortly before the November 2020 elections. Savage was the former President of the Philadelphia US Steel Workers Union, Vice Chair of the Democrat Party, and a political activist who had openly advocated for President Trumps removal from office and imprisonment.

56. Savage did NOT conduct, or sign sworn attestation for, certification and testing of election machines, as required by statutory law.

57. On November 5th, 2020, Savage inserted dozens of USB v-cards uploading hundreds of thousands of votes into election tabulation servers two days after the election with no chain of custody, or auditable pedigree that those votes had emanated certified election machines (with secure-build validation/hash testing), with no way for the election management system ("EMS") to electronically determine if they were authentic.

58. Subsequent litigative and OOR requests by Plaintiffs since November 2020 for canvassing, public records, recounts, have been unilaterally stifled and blocked by Defendants' political officer Allen and either affirmed, or left unadjudicated, by the Delaware CCP and Commonwealth Court as described herein.

59. Contrary to 25 P.S. § 1111(e) (cited above), political officer Allen has prevented any meaningful observation of certification, secure-build validation/hash testing, and logic and accuracy testing for every election since November 2020. Allen unilaterally confined observers to pens at long distance from testing area, turned machine election screens from observers, prevented observers from bringing in phones or electronics, prevented photos, and prevented their use of binoculars. Allen's edicts were enforced by over a dozen armed Sheriffs and municipal police officers who required observers to pass through metal detectors and be frisked, essentially limiting them to be isolated in a building with paper and pencil.

60. Hence, Defendants and its appointed Board of Elections has unlawfully delegated statutorily

reserved powers to a political bureaucratic body and <u>political officer</u> that does not answer to the People (or Plaintiffs), making it impossible to observe or redress grievances.

61. Secretary of the Department of Homeland Security ("DHS"), Jeh Johnson, stated that election machines and their storage are part of critical national infrastructure in an official DHS press release on January 16, 2017 (*On the Designation of Election Infrastructure as a Critical Infrastructure Subsector*).

   *(https://www.dhs.gov/news/2017/01/06/statement-secretary-johnson-designation-election-infrastructure-critical)*

62. States and Counties receive federal grant money for the security, protection, certification and testing of election machines.

63. Starting with the November of 2020 election and for subsequent elections, all attempts at election transparency under 25 PA.STAT. §§ 3261(a), § 3262(a), after electors suspected fraud or error, were thwarted by Allen, the Delaware County Board of Elections, and Delaware County Court of Common Pleas judges.

64. One of the means to validate election results and detect election fraud is 25 Pa. Stat. § 3154 *Computation of returns by county board; certification; issuance of certificates of election reconciliation of votes*, otherwise known as the "Return Board Report." The Return Board (cited 26 times in the election code) audits an election.

65. Since November of 2020, Defendants and their appointed Board of Elections and political officer Allen have failed to reconcile the vote for all elections, or provide required Return Board Reports and public records, which they were required to do, which further indicates malfeasance and a cover-up of election fraud.

66. The Return Board compares paper ballots to the machine results, and validates secure-build validation/hash testing, certification, and logic and accuracy testing was completed on election machines.

67. In response to Plaintiffs litigative and OOR requests for Return Board Reports, Defendants

000015

attempted to pass a local county ordinance eliminating the statutorily required report, which was overturned, but Defendants and political officer Allen still adamantly refuse to provide reports. Plaintiffs are in possession of two "unofficial" Return Board reports which plainly stated they could not reconcile the November 2020 and November 2022 national elections.

68. In fact, Defendants have been unable to reconcile any election since November 2020, and continue to refuse to provide the statutorily required signed and sworn Return Board Reports to Plaintiffs or the public.

69. Instead, Defendants have conducted independent "Risk Limited Audits" of the election results, which merely run paper ballots through an election machine scanner, without meaningful observation allowed by the public, and without any audit of any other aspect of the election, or any other election machines or equipment as evidence of "safe and secure elections."

70. According to Philip Stark, inventor of the Risk Limited Audit ("RLA"), and also Member of Advisory Board of the EAC, "*any machine that produces a cast vote record is not compatible with a risk liming audit*." (A Gentle Guide to Risk-Limited Audits, IEEE Security and Privacy, Special Issue on Electronic Voting, 2012)

*https://cloud.patriot.online/s/6zYqKiCWoqWms77*

71. The Hart Intercivic election machines used in Delaware County, and elsewhere in Pennsylvania, as well as Dominion and ES&S election machines used in the balance of counties in Pennsylvania all produce Cast Vote Records ("CVR's") for use in other election machine tabulation servers and are incompatible with RLA's.

72. It is NOT incumbent on Plaintiffs to "prove" election fraud while being denied access to evidence that would show election fraud. It is the Defendant's legal obligation to provide meaningful observation, recounts, ballot box contents (paper and digital), public election records, reconciliation reports, public hearings, adjudication of grievances, and trials by jury in the crucible of a courtroom – all of which they have adamantly refused to do.

73. Since voting systems being used in Delaware County, Pennsylvania lacked secure-build

000016

validation/hash testing, and since Defendants' political officer Allen demonstrably proved he was willing to falsify sworn attestations and documents, and since video and photographic evidence of alleged fraud in Delaware County elections exists, and since the Delaware County Board of Elections have not reconciled elections, and since Delaware County Judges have blocked election transparency, the citizens of Delaware County have not had honest or auditable elections.

74. With no guarantee that their vote was counted accurately, or even counted at all, the citizens of Delaware County, Pennsylvania, have been deprived of their right to vote in violation of 42 U.S. Code § 1983 which states the following:

   a. *"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."*

75. With no guarantee that their vote was counted equally with other citizens in the jurisdiction or in Federal elections with citizens of other States, the Plaintiffs' and citizens' of Delaware County, Constitutional Rights were violated under the Equal Protection Clause of the U.S. Constitution.

76. The Supreme Court of the United States has ruled that once a geographic unit from which a representative is elected is established, the Equal Protection Clause mandates that all who vote in the election must have an equal vote. *Gray v. Sanders*, 372 U.S. 368, 379 (1963)

000017

77. Regarding Equal Protection and other rights, the Fourteenth Amendment, Section 1 of The United States Constitution states:

    a. *"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."*

78. Voting is a Constitutionally protected Fundamental Right. As Thurgood Marshall states in his 1972 majority Opinion, "*In decision after decision, this court has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." Dunn v. Blumstein*, 405 U.S. 330 (1972).

79. As Justice Rehnquist included in *Richardson v. Ramirez*, 418 U.S. 24 (1974), "*Because the right to vote is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government...voting is a 'fundamental' right."*

80. The U.S. The Constitution does not give state legislatures, or by extension those hired by the state, or counties, to run elections (like Defendants' political officer, James Allen), the exclusive power to regulate elections.

81. The Election Clause of the U.S. Constitution, Article 1, Section 4, Clause 1, states, "*The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of chusing (sic) Senators."*

82. Limiting the State's ability to Regulate Elections was a safeguard put in place by the Framers of the Constitution to prevent the type of election fraud that can occur when state actors fail to do secure-build validation/hash testing making it impossible to detect tampering with the votes.

83. At the Constitutional Convention, Gouvenor (sic) Morris of Pennsylvania stated, "*the States*

000018

*may make false returns and then make no provisions for new elections."*

84. Alexander Hamilton expressed in the Federalist papers that, "*Nothing can be more evident than that an exclusive power of regulating elections for the national government, in the hands of the state legislatures, would leave the existence of the Union entirely at their mercy."*

85. The U.S. Constitution expressly provides that federal law preempts state law governing elections. In terms of regulating congressional elections, the State's role *"terminates according to federal laws." Buckman Co v. Plaintiffs Legal Comm.*, 531 U.S. 341, 347 (2001)

86. Defendant Delaware County, Pennsylvania and the Delaware County Pennsylvania Board of Elections have been running elections as if they are their own personal fiefdom in violation of The Supremacy Clause of the U.S. Constitution which establishes that the United States Constitution, Federal Laws, and treaties are the *"supreme law of the land."*

87. Plaintiffs reported the violations of law described herein (and more) to the US Attorney for the Eastern District of Pennsylvania William McSwain, Pennsylvania Attorney General (now Governor) Josh Shapiro, and Delaware County District Attorney Frederick J. Stollsteimer in sworn affidavits, declarations, and testimony.

88. Plaintiff Stenstrom provided a disclosure with referral of criminal charges to the US House Judiciary Committee Chairman Jim Jordan on July 4th, 2023, with no response.

89. Defendants abrogated their statutory roles to conduct honest and fair elections and violated election and criminal law, leaving it to Plaintiffs to assert their statutory authority as "authorized representatives," "poll watchers," and "candidate" under 25 P.S. Election Law to assert their authority to make Defendants comply. [1]

---

[1] See Sullivan, supra note 56, at 1937–38 ("Writing in 1962, Norman Redlich argued that the closing phrase of the Tenth Amendment identified a collection of powers 'possessed by neither the federal government nor the states.'" (quoting Norman Redlich, Are There "Certain Rights . . . Retained by the People?", 37 N.Y.U. L. Rev. 787, 807 (1962))); cf. Akhil Reed Amar, Constitutional Redundancies and Clarifying Clauses, 33 Val. U. L. Rev. 1, 20 (1998) (arguing that although the last three words of the Tenth Amendment are redundant and may add only emphasis, "as

# INJURIES

90. Plaintiffs have been stripped of their fundamental Constitutional and Civil Rights.

91. The US Attorney General, multiple public officials in the US Department of Justice, Pennsylvania Attorney General (no Governor) Josh Shapiro, and Delaware County District Attorney Frederick J. Stollsteimer obstructed investigations of election law violations reported to them by Plaintiffs, and harassed, defamed, and intimidated them, and defied the People of honest public service.

92. Plaintiffs have been subjected to harsh retaliation for trying to enforce their Constitutional and Civil Rights.

   a. Special agents for the State of Pennsylvania came to Plaintiffs Stenstrom and Hoopes homes, armed with guns, following the direct orders of then Pennsylvania State Attorney General Josh Shapiro (now Governor) for the sole purpose to harass and intimidate them from exposing massive election fraud that benefitted Shapiro.

   b. Plaintiff Schwartz was deprived of knowing the true voter count in her election for Delaware County Commissioner and may have been deprived of that position and the salary she would have received from it.

   c. For their efforts in exposing massive election fraud committed by Defendants, Pro Se Plaintiffs Stenstrom and Hoopes have been sued six times, unsuccessfully sanctioned seven (7) times, and are defendants in multiple lawsuits against them that are still in the trajectory of politically activist courts, in lawfare campaigns coordinated by local, state, and federal actors.

93. For trying to enforce their Constitutional and Civil Rights, Plaintiffs have had their reputations tarnished in an attempt to discredit them through defamation campaigns that were coordinated by Defendants with the Annenberg Public Policy Foundation at the

---

a matter of popular sovereignty, the amendment's last three words echo the Preamble's first three, reminding us that here, the People rule").

000020

University of Pennsylvania, otherwise known as "Factcheck.org."

94. In pursuance of their Constitutional and Civil Rights, against state actors who have spent four years blocking election transparency, Plaintiffs have sacrificed countless hours of their time and personal resources.

95. Without direct intervention and oversight by the Honorable Court, Defendants will continue defying federal and state election laws, which in the National Election of November 5, 2024, with Pennsylvania being a swing state with nineteen (19) electoral votes in the Electoral College, will have grave consequences for the citizens of every state in the Union.

96. Defendants, public officials, and law enforcement officers at every level of government failed to provide honest public service and left the sovereign People (and Plaintiffs) to fulfill their statutory roles and provide oversight of the elections at great personal expense to Plaintiffs, the theft of a nation, and installation of an illegitimate government.

## RELIEF

97. Cease and Desist from using electronic voting systems in Delaware County, Pennsylvania and return to hand counted votes in county precincts under bi-partisan observation.

98. Federal intervention, review, and oversight, of precipitative cases named herein, that have been delayed, quashed, and strategically mooted.

99. Reversal of orders unlawfully denying Plaintiffs' access to public election records, and clear definition of the manner in which they will be provided.

100. Criminal referrals to appropriate federal and state justice and law enforcement agencies.

101. Monetary Damages and other relief and compensation as may be appropriate.

Respectfully submitted,

Robert Mancini, PRO SE
4 Guernsey Lane
Media, PA, 19063
610-506-9827

Joy Schwartz, PRO SE
514 Lombardy Road
Drexel Hill, Pennsylvania 19026
jschwartzpro@gmail.com
610-622-1958

Gregory Stenstrom, PRO SE
1541 Farmers Lane,
Glen Mills, PA 19342
856-264-5495
gregorystenstrom@gmail.com

Leah Hoopes, PRO SE
241 Sulky Way
Chadds Ford, PA
leahfreedelcopa@protonmail.com
610-608-3548

Date: June 4th, 2024

000022

## VERIFICATION

We, the Plaintiffs herein and listed below, state that we are PRO SE PLAINTIFFS in this matter and are authorized to make this Verification on its behalf. We hereby verify that the statements made in the foregoing COMPLAINT are true and correct to the best of our knowledge, information, and belief. This verification is made subject to the penalties of 19 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

/S/ Robert Mancini, Joy Schwartz, Gregory Stenstrom, Leah Hoopes /S/

June 4th, 2024

SELF REPRESENTATION (PRO SE)
_____

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

CASE No. _____

**COMPLAINT**
**AND INJUNCTION TO PREVENT DEFENDANTS FROM UNLAWFULLY USING VOTING**
**MACHINES**

MANCINI, et al.
Plaintiffs,
v.
DELAWARE COUNTY BOARD OF ELECTIONS,
PA, et. al,
Defendants
_____

### CERTIFICATE (PROOF) OF SERVICE

Plaintiffs certify that they caused the subject **COMPLAINT AND INJUNCTION TO PREVENT DEFENDANTS FROM UNLAWFULLY USING VOTING MACHINES** to be properly served on the following:

Defendants Delaware County and Delaware County Board of Elections
Solicitor for Defendants J. Manly Parks, Nick Centrella
Delaware County Government Center
201 West Front Street, Media, PA 19106

/S/ Rober Mancini, Joy Schwartz, Gregory Stenstrom, Leah Hoopes /S/

June 4th, 2024