IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANCINI, *et al.* | No. 2:24-cv-02425-KNS |
| Plaintiffs. | JURY TRIAL DEMANDED |
| v. | |
| DELAWARE COUNTY, *et al.* | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DELAWARE COUNTY AND DELAWARE COUNTY BOARD OF ELECTIONS MOTION TO DISMISS**

Defendants Delaware County ("County") and the Delaware County Board of Elections ("Board") (collectively "County Defendants") hereby submit this memorandum of law in support of their Motion to Dismiss and state as follows:

**I.     INTRODUCTION**

This case is meritless.  Plaintiffs are serial *pro se* election litigants who have been in virtually continuous litigation against the County Defendants since 2020, and have seen their falsehoods concerning the integrity of Delaware County's elections thoroughly rebutted and uniformly dismissed by every level of the Pennsylvania state court system.  Plaintiffs now bring the County Defendants into this Court to repeat their numerous false statements about prior state court adjudications and the election process in Delaware County generally.  Despite the numerous falsehoods contained in the Complaint, the Court need not address those factual issues in this Motion to Dismiss, as Plaintiffs' Complaint is legally deficient.  Plaintiffs have no cause of action pled whatsoever; could not state a claim even if they did; have failed to plead a basis for subject matter jurisdiction; lack standing; and impermissibly ask this Court to sit as a *de facto* appellate court for state court rulings in the County Defendants' favor.

This case is an abuse of the judicial system, is legally and factually meritless, and should be dismissed.

## II.     FACTUAL BACKGROUND

This is the twentieth election-related case that one or more of these Plaintiffs have filed since the 2020 General Election. Plaintiffs' Complaint fails to develop any coherent claim or reason for bringing this particular case at this particular juncture and instead contains a grab-bag of grievances against the County Defendants and Pennsylvania state court system.

Plaintiffs' Complaint appears to develop at least two theories. First, Plaintiffs assert that the County Defendants use electronic voting machines that do not comply with the Help America Vote Act ("HAVA") because the pre-election Logic and Accuracy Testing ("L&A Testing") required by the Commonwealth of Pennsylvania under HAVA does not meet their satisfaction. *See, e.g.*, Complaint at ¶¶ 1, 7, 11, 28-48.[1] Second, Plaintiffs assert that the rulings in a variety of state court cases have harmed them and ask this Court to overturn those rulings. *See, e.g.*, *id.* at ¶¶ 10, 12-19, 98-99. Plaintiffs additionally assert a variety of unrelated grievances about elections in Delaware County, the structure of various federal and state statutory schedules for regulating elections, and the failure of various state and federal law enforcement officials to prosecute the County Defendants. *See, e.g.*, *id.* at ¶¶ 50-89.[2]

---

[1] Although this Court need not address the underlying facts of the Complaint for the purposes of this Motion, the County Defendants strenuously deny that the voting machines used in Delaware County elections in any way do not fully comply with all applicable laws and regulations.

[2] Because the Complaint does not have any causes of action pled, the County Defendants have determined that the thrust of the action concerns the first and second theories noted above, as evidenced by Plaintiffs' requested relief of decertifying the voting machines and reversing several state court rulings. *See* Complaint at ¶¶ 97-101. Accordingly, this Motion does not discuss the third category of miscellaneous grievances because they are unconnected to the

**III.     ARGUMENT**

   **A.     Legal Standard**

The County Defendants bring this Motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted, and Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

   1.     Federal Rule of Civil Procedure 12(b)(6)

"In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Hopkins v. Yesser*, 412 F. Supp. 3d 517, 522 (E.D. Pa. 2019) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*; (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In the Third Circuit, for a Complaint to meet the *Twombly* and *Iqbal* standards, a court must "take note of the elements a plaintiff must plead to state a claim," must "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth," and must "assume [the] veracity" of all well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011)).

---

requested relief.  Nevertheless, the myriad allegations complaining of the setup of elections under federal and state law are equally deficient for the various reasons discussed in this Motion.

      2.      Federal Rule of Civil Procedure 12(b)(1)

"If a District Court does not have subject matter jurisdiction, it must dismiss." *Saavedra Estrada v. Mayorkas*, No. CV 23-2110, 2023 WL 8096897, at *4 (E.D. Pa. Nov. 21, 2023) (quoting *Berg v. Obama*, 586 F.3d 234, 242 n.6 (3d Cir. 2009)).  A facial attack on subject matter jurisdiction "challenges whether the plaintiff has properly pled jurisdiction." *Brock v. Thomas*, 782 F. Supp. 2d 133, 138 (E.D. Pa. 2011) (quoting *Tulpehocken Spring Water, Inc. v. Obrist Americas, Inc.,* No. 09–CV–2189, 2010 WL 5093101, at *2 (M.D.Pa. Dec. 8, 2010)).  In reviewing a facial attack on the Court's subject matter jurisdiction, the court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Machon v. Pennsylvania Dep't of Pub. Welfare*, 847 F. Supp. 2d 734, 743 (E.D. Pa. 2012) (quoting *Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir.2000)).

    B.    Plaintiffs Fail to State a Claim in Compliance with the Federal Rules of Civil Procedure

As an initial matter, Plaintiffs have failed to state a claim, in violation of the Rules of Civil Procedure.

Federal Rule of Civil Procedure 8(a) requires a short and plain statement of the claim showing that the pleader is entitled to relief.  The Complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bakkali v. Walmart, Inc.*, 2020 WL 5517350, at *2 (E.D. Pa. Sept. 14, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Here, Plaintiffs do not meet the *Iqbal* standard, as they do not recite the elements of a cause of action and connect those elements back to the facts alleged.  Instead, the Complaint is a

4

hodgepodge of various grievances that the Plaintiffs have against the County Defendants and a laundry list of prior proceedings that concluded in the County Defendants' favor. It is impossible to say that Plaintiffs have failed to factually support their cause of action when they have not asserted one at all. This alone is sufficient for dismissal.

      C.      <u>This Court Lacks Subject Matter Jurisdiction</u>

Beyond the facial pleading deficiency in the Complaint, the Complaint should be dismissed because this Court lacks subject matter jurisdiction, as there is no federal question pending before it.

Under 28 U.S.C. § 1331, this Court is vested with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." A case arises under federal law, within the meaning of 28 U.S.C. § 1331, if "a well-pleaded complaint establishes that either federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).

Here, Plaintiffs assert jurisdiction is proper under 28 U.S.C. § 1331 because their Complaint "presents federal questions under the American Public Administration (APA) [sic], Help America Vote Act (HAVA), and Federal Advisory Committee Act (FACA), which are significant components of federal legislation that have shaped the electoral process in the United States." *See* Complaint at ¶ 3.[3]

---

[3] Plaintiffs also leave no doubt that 28 U.S.C. § 1331 is their sole basis for jurisdiction, alleging that "the present issue is solely a matter of federally mandated law, not a matter of diversity jurisdiction, procedural discretion, or impingement of State or local municipal rights." *See* Complaint at ¶ 5.

As discussed below, this Court lacks subject matter jurisdiction because none of the statutes cited in Plaintiffs' Complaint creates a private right of action or, in the case of FACA and APA, applies whatsoever to the County Defendants. Moreover, there is no substantial question of federal law, as the voting machines at issue are approved by the Secretary of the Commonwealth as safe, secure, and reliable.

1. <u>The Help America Vote Act Does Not Authorize a Private Right of Action</u>

Although Plaintiffs have failed to assert a cause of action, they assert that this Court has subject matter jurisdiction because the County Defendants violated HAVA. Even construing the pleading in the light most favorable to the Plaintiff, this theory fails, because HAVA does not authorize a private right of action.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create . . . a private right [and] and private remedy." *Id.* "By its text," HAVA "only allows enforcement via attorney general suits or administrative complaint." *Am. Civil Rts. Union v. Philadelphia City Comm'rs.*, 872 F.3d 175, 184–85 (3d Cir. 2017); *see also Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019). In fact, HAVA's text is explicit that "[t]he Attorney General may bring a civil action against any State or jurisdiction . . . to carry out the uniform and nondiscriminatory election technology and administration requirements under [52 U.S.C. §] 21081." 52 U.S.C. § 21111.

Plaintiffs' claim, which they purport arises from 52 U.S.C. § 21081, fails because Congress has not authorized private plaintiffs to bring such claims. HAVA is explicit that such claims may only be brought by the Attorney General if the Attorney General determines that a jurisdiction has failed to carry out uniform and nondiscriminatory election technology and

administration requirements as mandated by 52 U.S.C. § 21081. *See* 52 U.S.C. § 21111. Plaintiffs actually claim that they brought their claims to the Attorney General (among other public officials) for prosecution, but the Attorney General (and other officials) declined to institute an investigation. *See* Complaint at ¶¶ 87- 89.

Because HAVA does not authorize this action, it cannot be the basis for jurisdiction.

### 2. The Federal Advisory Committee Act Does Not Apply to the County Defendants

Plaintiffs' assertion that jurisdiction is proper in this case due to a potential claim under FACA similarly misses the mark, because FACA does not apply to the County Defendants.

FACA was enacted by Congress to review committees advising officers and agencies in the executive branch of the Federal Government and to establish uniform standards and procedures for their creation, operation, and duration. 5 U.S.C. app. § 2(a), (b)(4); *see also Pub. Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 446 (1989). FACA defines an "advisory committee" as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is (A) established by statute or reorganization plan, or (B) established or utilized by the President, or (C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President one or more agencies or offers of the Federal Government." 5 U.S.C. app. § 3(2).

The County Defendants are not subject to FACA because they are state entities. The County is a political subdivision in the Commonwealth of Pennsylvania and was created by state law. *See* 16 P.S. § 201 (dividing the Commonwealth into 67 named counties including Delaware County). The Board is a subdivision of the County and is authorized by the Pennsylvania Election Code. *See* 25 P.S. § 2641. Importantly, neither entity is considered a Commonwealth

entity or agency, let alone a federal agency, for statutory interpretation purposes. *See Republican National Committee, et al, v. Chapman*, 447 MD 2022 at 24-28 (Pa. Cmwlth. March 23, 2023) (holding that county boards of election are considered local agencies). Thus, there is no nexus between FACA and the County Defendants, who are not federal advisory committees, or any other type of federal entity, as defined by FACA. Accordingly, FACA does not apply and cannot be a basis for federal question jurisdiction.

        3.      <u>The Administrative Procedures Act Also Does Not Apply to the County Defendants</u>

Similar to FACA, the APA also does not apply to the County Defendants because the County Defendants are local entities and not federal agencies.

"The APA applies to the actions of federal agencies," not to counties or county entities. *Cmty. Health Care Ass'n of New York v. DeParle*, 69 F.Supp. 2d 463, 474 (S.D.N.Y. 1999); *see also Skydiving Ctr. of Greater Washington, D.C., Inc. v. St. Mary's Cnty. Airport Comm'n*, 823 F. Supp. 1273, 1279 n.2 (D. Md. 1993). As stated above, the County Defendants are not federal agencies. *See* 16 P.S. § 201; 25 P.S. § 2641; *Republican National Committee*, 447 MD 2022 at 24-28. They are, respectively, a County and a local agency. *See id.*

Without a raising a cause of action authorized by APA or any allegation that the County Defendants are subject to the APA as a federal agency, Plaintiffs have failed to show that the APA can be a basis for federal question jurisdiction.

        4.      <u>Plaintiffs Do Not Raise Any Substantial Question of Federal Law</u>

Because Plaintiffs have not shown any of the statutes cited create a cause of action for them against the County Defendants, Plaintiffs must show that their Complaint raises substantial questions of federal law, and have failed to do so.

In the "very rare cases" where a federal court "may find federal question jurisdiction in the absence of a federal private right of action," the analysis turns on whether a claim raises "a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Baum v. Keystone Mercy Health Plan*, 826 F. Supp.2d 718, 720-21 (E.D. Pa. Oct. 2011) (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005)).

Parsing Plaintiffs' Complaint here, Plaintiffs appear to allege that the County Defendants have violated state law by using voting machines which are not properly certified by the Secretary of the Commonwealth.[4] Plaintiffs assert that "[w]hile Defendants are at County level…Pennsylvania's refusal to comply with verification of election machines, logic and accuracy testing, recounts, recanvassing, and disclosure of public records, to ensure safe and honest elections substantially impacts [sic] electoral college outcomes [sic] for Pennsylvania and is, therefore, of critical national (federal) interest to the Republic." *See* Complaint at ¶ 6. Plaintiffs also allege, in the Complaint at ¶ 11, that they have suffered various injuries by state court rulings dismissing their claims for recounts and examinations of records under Pennsylvania state law. More concretely, Plaintiffs appear to allege that "Defendants did not comply with 52 U.S.C. § 21081(a)(5) *Error Rate* requirements," and that this supposed failure to comply with the federal statute renders the voting machines unreliable and may introduce fraud into the electoral system. *See id.* at ¶ 27 (emphasis in original).

---

[4] Plaintiffs also appear to allege various injuries arising from prior adjudications in state court, which as discussed in Section III(E) of this Brief, *infra*, counsel dismissal under the *Rooker-Feldman* doctrine. The nature of Plaintiffs' claim is ultimately unclear because Plaintiffs never identify an actual cause of action.

9

These claims are insufficient for federal question jurisdiction because Congress has already delegated authority for testing and approval of the voting machines to the Secretary of the Commonwealth, and the Secretary (and not the County Defendants) has authority to certify such machines as compliant with federal law. HAVA delegates implementation of its provisions to the states. *See* 52 U.S.C. § 21085 ("The specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State."). In Pennsylvania, the General Assembly has vested that power in the Secretary of the Commonwealth, and the Pennsylvania Election Code provides for the Secretary to examine voting machines and certify them for use in elections. *See generally* 25 P.S. § 3031.5. If any voting machine is reexamined prior to an election and it appears that it "can no longer be used safely by voters at elections," the Secretary may revoke approval of the system. *See* 25 P.S. § 3031.5(c). The Election Code also sets forth the requirements for pre-election Logic and Accuracy Testing for voting machines so that the "reexamination" called for in the statute is done in accordance with federal law. *See* 25 P.S. § 3031.10.

In that context, then, there is no "federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," because the specific implementation of HAVA in Pennsylvania is performed according to the Election Code, as dictated by 25 U.S.C. § 21085. Thus, any claim that the County Defendants have not complied with the specific implementation of HAVA, in this context, is ultimately question of whether the County Defendants have complied with the Election Code procedures for implementing HAVA, including error rate testing, and whether the Secretary of the Commonwealth has properly approved the County

10

Defendants' voting machines for use in Pennsylvania elections. This is a question of state law, *see* 25 P.S. § 3031.1 *et seq.*, and cannot be the basis for federal question jurisdiction.

Without any sufficient basis for subject matter jurisdiction under federal law, the Complaint should be dismissed.

        D.      <u>Plaintiffs Lack Standing</u>

Plaintiffs' Complaint must also be dismissed because they lack standing to bring these claims under any theory.

For a plaintiff to have standing under Article III, they must allege an injury in fact, fairly traceable to challenged conduct, which is likely to be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). To establish an injury in fact, a plaintiff must show that "he or she suffered an invasion of a legally protected interest," that the injury is both "concrete and particularized," and that "his or her injury is actual or imminent, not conjectural or hypothetical." *Mielo v. Steak 'n Shake Operations*, 897 F.3d 467, 478 (3d Cir. 2018) (quotations omitted). It is not enough for a plaintiff to claim "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992)).

In this case, Plaintiffs assert standing based on the exact type of generalized harm barred by *Lance*. Plaintiffs allege that "[w]ith no guarantee that their vote was counted accurately, or even counted at all, the citizens of Delaware County, Pennsylvania have been deprived of their right to vote in violation of 42 U.S. Code § 1983," and that "[w]ith no guarantee that their vote was counted equally with other citizens in the jurisdiction or in federal elections with citizens of

11

other States, the Plaintiffs' and citizens' [sic] of Delaware County, Constitutional Rights [sic] were violated under the Equal Protection Clause of the United States Constitution." *See* Complaint at ¶¶ 74-75.[5]

These allegations are insufficient to confer standing because Plaintiffs have not shown particularized harm or concrete injury.

### 1. Plaintiffs' Claimed Harm is Not Concrete and Particularized

First, Plaintiffs fail to show concrete or particularized claimed harm because they appear to assert an Equal Protection claim on behalf of all voters.

For a claim to be concrete and particularized, a voter must "allege facts showing disadvantage to themselves as individuals." *See Gill v. Whitford*, 585 U.S. 48, 65-67 (2018). This limit applies with equal force to voting rights cases. *See Lujan*, 504 U.S. at 576 ("[T]here is absolutely no basis for making the Article III inquiry turn on the source of the asserted right.").

In the context of Equal Protection claims regarding the conduct of elections, a plaintiff must be able to show that the challenged action made their vote less valuable compared to those of some other group. *See Gill*, 585 U.S. at 65-68; *see also Bognet v. Sec'y Commonwealth of Pennsylvania*, 980 F.3d 336, 356-57 (3d Cir. 2020) (citing multiple cases), *cert. granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S.Ct. 2508, 209 L.Ed.2d 544 (2021). The key inquiry under the Equal Protection Clause is whether some "invidious classification" has been made, such that "the favored group has full voting strength and the

---

[5] Again, because of the "shotgun" nature of the Complaint, it is unclear which allegations connect to which legal theory. The County Defendants acknowledge that Plaintiffs also assert that they were injured by various state court judgments, which are discussed in Section III(E) *infra*. Those allegations appear to relate to a separate theory from Plaintiffs' core claim that voting machines are somehow illegitimate or not compliant with federal law, which appears to assert an Equal Protection claim and is analyzed under that framework.

groups not in favor have their votes discounted[.]" *Bognet*, 980 F.3d at 359 (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 n. 29 (1964)).

For example, a voter living in an affected district may have standing to claim that their vote in particular has been devalued by an unlawful racial gerrymander, but they may not complain of gerrymandering broadly, relying on generalized harms to public interests such as "collective representation in the legislature." *See Gill*, 585 U.S. at 67-68. In litigation over mail-in ballot requirements, the Third Circuit has stated that even if an unlawful act occurred and diluted valid votes, the affected voters would not suffer a particularized harm adequate to confer standing for an Equal Protection claim if the dilution occurred in an undifferentiated manner, not impacting particular groups of voters. *Bognet*, 980 F.3d at 356-57.

Plaintiffs in this case have not explained the precise basis for their Equal Protection claim at all, and they have not alleged that their votes were particularly disadvantaged as compared to some other group. Rather, they allege that the use of voting machines which, in their view, do not comply with federal law affected all voters in Delaware County and left them with "no guarantee that their vote was counted equally with other citizens in the jurisdiction or in Federal elections with citizens of other states." *See* Complaint at ¶ 75. Plaintiffs also allege that all citizens of Delaware County have been deprived of their right to vote. *See id.* at ¶ 74. These allegations are precisely the sort of "generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large," that are insufficient to confer standing. *Lance*, 549 U.S. at 439.

### 2. Plaintiffs Have Not Identified Any Actual or Imminent Harm

Beyond the fact that Plaintiffs allege only a generalized theory of claimed harm that affects all voters, Plaintiffs also fail to identify any actual or imminent harm sufficient to confer standing.

The Supreme Court has emphasized that to constitute an injury in fact, a threatened injury must be "certainly impending" and not merely "possible". *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The Supreme Court has cautioned that courts should be particularly reluctant to endorse standing theories resting on speculation about acts—especially unlawful acts—of independent actors. *Id.* at 414; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 & 106 n.7 (1983). In the elections context, speculation based on particular outcomes of votes cast is not sufficient to meet this requirement. *Bognet*, 980 F. 3d at 361-62.

The harm claimed by Plaintiffs in this case is purely speculative. They have not alleged that their votes were actually devalued, or that they were in any other way disadvantaged; they merely complain that they have "no guarantee" that these possible harms *did not* occur. *See* Complaint at ¶ 75. Plaintiffs also assert, in ¶ 92(b), that Plaintiff Schwartz "was deprived of knowing the true voter count in her election for Delaware County Commissioner and may have been deprived of that position and the salary she would have received from it."[6] Yet Plaintiffs have no allegation or fact-based pleading that the vote count in that election was in any fashion inaccurate or manipulated. In fact, Delaware County performed several precinct-level recounts

---

[6] Separate and apart from the fact that Plaintiff Schwartz's vote count is publicly available (https://election.co.delaware.pa.us/eb/November_2023/index.html) and is a public record of which the Court may take judicial notice, *see Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020), the Pennsylvania Election Code allows for election challenges, which Plaintiff Schwartz never filed. 25 P.S. § 3456, *et seq.* Using the federal forum to effectively mount such a challenge is inappropriate and is not a basis for federal jurisdiction. *See* 28 U.S.C. § 1331.

in that election which confirmed the original vote totals. *See In re Edward Deisher, et al.*, No. CV-2023-009601 (C.P. Del., filed Nov. 14, 2023); *In re Tuesday, November 7, 2023 General Election Petition Requesting A Recount/Recanvass for Supervisor's Race in Edgmont Township 1st and 2nd Precincts*, No. CV-2023-009706 (C.P. Del., filed Nov. 14, 2023); *In re Petition to Open Ballot Box of Glenolden Borough*, Case No. CV-2023-009780 (C.P. Del., filed Nov. 14, 2023); *see also Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) ("Courts may take judicial notice of public records, including "publicly available records and transcripts from judicial proceedings. In particular, publicly available records from other judicial proceedings may be judicially noticed in the context of a motion to dismiss.").

These supposed harms do not allege any concrete facts and instead resort to rank speculation about vote totals and outcomes that lack any basis in law or fact. Plaintiffs have no basis for standing and the Complaint should be dismissed.

E. This Court Should Dismiss Under the *Rooker-Feldman* Doctrine

Finally, in addition to the reasons stated above, this Court should dismiss this action under the *Rooker-Feldman* doctrine, as Plaintiffs seek to have this Court review and reverse state court judgments that they contend caused them injury.

A United States District Court "has no authority to review final judgments of a state court in judicial proceedings." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *see also King v. Burr*, No. 2:17-CV-02315-MMB, 2017 WL 3705872, at *3 (E.D. Pa. Aug. 24, 2017) (The *Rooker-Feldman* doctrine derives from 28 U.S.C. § 1257, which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court."). In the Third Circuit, four requirements "must be satisfied in order for *Rooker-Feldman* to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those state-court

15

judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.* (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)).

In this case, Plaintiffs' claim falls within the ambit of *Rooker-Feldman* because they complain of adverse state court judgments which caused them injury and ask this Court to reverse those judgments.

First, Plaintiffs assert that they have lost in state court. *See* Complaint at ¶¶ 10-16. Plaintiffs detail numerous instances where they have filed identical claims in state court and had those claims dismissed in various levels of the Pennsylvania court system. *See id.*

Second, Plaintiffs assert the state court judgments have caused their injury. Plaintiffs specifically claim that "[e]vents giving rise to the subject complaint occurred in Delaware County," and then go on to cite a series of cases adjudicated in the Delaware County Court of Common Pleas where Plaintiffs' claims were dismissed. *See id.* at ¶ 10. Plaintiffs also allege that "the local Delaware County CCP has repeatedly affirmed that the Defendants' bureaucratically appointed Delaware County Board of Elections, and the appointed Director Elections, James Allen, have complete and utter, final authority in deciding whatever they please with regards to conforming to federal and state election laws and the release of public election records, and they have continuously violated those laws." *See id.* at ¶ 14. Due to those dismissals and orders affirming Delaware County's procedures are proper, the Plaintiffs ask this Court for relief in the form of "[f]ederal intervention, review, and oversight, of precipitative cases named herein, that have been delayed, quashed, and, and strategically mooted," as well as "[r]eversal of orders unlawfully denying Plaintiffs' access to public election records, and clear definition of the manner in which they will be provided." *See id.* at ¶¶ 98-99. Accordingly,

Plaintiffs have alleged their injury arises from the state court cases at issue, satisfying the second element for application of *Rooker-Feldman*.

Third, the state court judgments at issue were rendered before this case was filed. Again, Plaintiffs allege that they have been stymied in numerous state court actions involving the same essential allegations that elections in Delaware County are somehow not secure or are illegitimate. *See* Complaint at ¶ 10.[7] Plaintiffs in fact ask for reversal of those judgments as relief, an admission that the judgments have been entered. *See id.* at ¶¶ 98-99.

Fourth, Plaintiffs are inviting this Court to review and reverse the state court judgments. Plaintiffs explicitly ask for this relief, requesting the Court grant them "[f]ederal intervention, review, and oversight, of precipitative cases named herein, that have been delayed, quashed, and, and strategically mooted," as well as "[r]eversal of orders unlawfully denying Plaintiffs' access to public election records, and clear definition of the manner in which they will be provided." *See id.* at ¶¶ 98-99. This language is unambiguously asking for the Court to reverse and review prior judgments entered by the state court.

The allegations of the Complaint demonstrate that Plaintiffs are impermissibly requesting this Court to sit as a de facto appellate court and reverse state court judgments, which is improper under statutory law and the *Rooker-Feldman* precedent. See *Feldman*, 460 U.S. at 482; 28 U.S.C. § 1257. Therefore, the County Defendants respectfully request that this Court dismiss the Complaint on this basis.

---

[7] Defendants' allegations in Paragraph 11 regarding the Missino case are incorrect. The case has been administratively closed. *See* Docket attached as **Exhibit A**. This Court may take judicial notice of that disposition. *Sturgeon*, 438 F. Supp.3d at 257.

17

F. <u>Amendment Should Be Denied and the Complaint Dismissed with Prejudice</u>

In the event this Court grants this Motion and dismisses the Complaint, the dismissal should be with prejudice, as the nature of the theories noted above mean any amendment would be futile.

Under Fed. R. Civ. P. 15, plaintiffs may be given leave to amend their Complaint in response to a motion to dismiss unless amendment would be futile. *Winans v. Cox Automotive, Inc.*, 669 F. Supp.3d 394, 404 (E.D. Pa. 2023). Futility means "that the complaint, as amended, would fail to state a claim upon which relief could be granted." *See id.*

Here, amendment would be futile because Plaintiffs' lack of standing and the lack of subject matter jurisdiction are incurable defects. These are not mere pleading deficiencies but are instead substantive problems with the nature of Plaintiffs' claims themselves, meaning that any additional amendment could not cure them. Accordingly the County Defendants request dismissal of the Complaint with prejudice.

## IV. CONCLUSION

Based on the foregoing, Delaware County and the Delaware County Board of Elections respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

*[Signature Block on Following Page]*

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated: July 1, 2024 | **DUANE MORRIS LLP** |
| | By: */s/ J. Manly Parks*<br>J. Manly Parks (74647)<br>Nicholas M. Centrella, Jr. (326127)<br>Brian A. Kennedy (334441)<br>30 South 17th Street<br>Philadelphia, PA  19103-4196<br>Telephone: +1 215 979 1000<br>Fax: +1 215 979 1020 |
| | *Attorneys for Delaware County and the Delaware County Board of Elections* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2024, I caused a copy of the foregoing to be served on all pro se Plaintiffs via this Court's ECF system and via e-mail:

Robert Mancini
delcocyber@gmail.com

Gregory Stenstrom
gregorystenstrom@gmail.com

Leah Hoopes
leahfreedelcopa@protonmail.com

Joy Schwartz
jschwartzpro@gmail.com

Dated: July 1, 2024                                          */s/ Nicholas Centrella Jr.*
                                                             Nicholas Centrella Jr.