**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| MANCINI, *et al.* | : | No. 2:24-cv-02425-KNS |
| | : | |
| Plaintiffs. | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| DELAWARE COUNTY, *et al.* | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Delaware County ("County"), the Delaware County Board of Elections ("Board") (collectively "County Defendants"), and James Allen ("Allen") (collectively with the County Defendants the "Defendants") hereby submit this Memorandum of Law in support of their Motion to Dismiss and state as follows:

## I.       INTRODUCTION

Plaintiffs have failed to cure the deficiencies in their original Complaint. As discussed in the Motion to Dismiss the original Complaint in this action, Plaintiffs are serial *pro se* election litigants who have been in virtually continuous litigation against the County Defendants since 2020. Their falsehoods concerning the integrity of Delaware County's elections have been thoroughly rebutted and uniformly dismissed by every level of the Pennsylvania state court system. After taking their numerous falsehoods about prior state court adjudications and the election process in Delaware County to this Court, Plaintiffs now seek to bring in Delaware County's Director of Elections, James Allen, but fail to assert any factual allegations to support having done so.

As with the initial Complaint, the Court need not address Plaintiff's numerous factual falsehoods in the Plaintiffs' Amended Complaint, as it is legally deficient. Despite being afforded a new opportunity to plead their case, Plaintiffs again fail to plead any causes of action (and could not state a viable claim even if they did), fail to assert any claims conferring jurisdiction upon this Court, and, crucially, still lack standing.[1]

In sum, this case remains an abuse of the judicial system, is legally and factually meritless, and should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

This is the twentieth[2] election-related case that one or more of these Plaintiffs have filed since the 2020 General Election. Plaintiffs' Amended Complaint contains no coherent allegations supporting any claim or cause of action.

Reading it generously, Plaintiffs' Amended Complaint, together with the Memorandum of Law in support thereof and the various appendices and exhibits thereto, appear to assert that the County Defendants use electronic voting machines that do not comply with the Help America Vote Act ("HAVA") because the pre-election Logic and Accuracy Testing ("L&A Testing") required by the Commonwealth of Pennsylvania under HAVA does not meet their satisfaction.

---

[1] In addition, Plaintiffs' Amended Complaint is entirely un-numbered, which violates Federal Rule of Civil Procedure 10(b). As the Amended Complaint contains neither numbered paragraphs nor page numbers, Defendants will refer to the Complaint using the pagination added when filed.

[2] In addition to the 19 previously-filed cases, in the past week alone the individuals in or associated with this group have filed two additional (and baseless) lawsuits against Delaware County, its Board of Elections, and its employees and elected officials—one in this Court and the other in the Delaware County Court of Common Pleas—relating to claimed election law violations. Both of those other cases, which seek emergency injunctive relief, allege the same wrongheaded and legally incorrect allegations regarding "hash testing" as are found in the "Memorandum of Law in Support of Amended Complaint" that was filed in this action (*See* Amended Complaint at 5, 13-14, 15-16, 17-18).

*See, e.g.*, Amended Complaint at 1, 2, 3, 5, and 6.[3]  Plaintiffs assert that this imagined non-compliance somehow deprives them of their constitutional rights.[4] *See, e.g.*, *id.* at 1, 2, 3, 5, and 6.

## III.   ARGUMENT

### A.   Legal Standard

The Defendants bring this Motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted, and Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

#### 1.   Federal Rule of Civil Procedure 12(b)(6)

"In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Hopkins v. Yesser*, 412 F. Supp. 3d 517, 522 (E.D. Pa. 2019) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*; (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[3] Although this Court need not address the underlying facts of the Complaint for the purposes of this Motion, the Defendants strenuously deny that the voting machines used in Delaware County elections in any way do not fully comply with all applicable laws and regulations.

[4] Plaintiffs have added James Allen, the Delaware County Director of Elections, as a defendant in the Amended Complaint but fail to explain the basis of any liability on Allen's part. *See id.* at 1-3.

In the Third Circuit, for a Complaint to meet the *Twombly* and *Iqbal* standards, a court must "take note of the elements a plaintiff must plead to state a claim," must "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth," and must "assume [the] veracity" of all well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011)).

2.    Federal Rule of Civil Procedure 12(b)(1)

"If a District Court does not have subject matter jurisdiction, it must dismiss." *Saavedra Estrada v. Mayorkas*, No. CV 23-2110, 2023 WL 8096897, at *4 (E.D. Pa. Nov. 21, 2023) (quoting *Berg v. Obama*, 586 F.3d 234, 242 n.6 (3d Cir. 2009)). A facial attack on subject matter jurisdiction "challenges whether the plaintiff has properly pled jurisdiction." *Brock v. Thomas*, 782 F. Supp. 2d 133, 138 (E.D. Pa. 2011) (quoting *Tulpehocken Spring Water, Inc. v. Obrist Americas, Inc.,* No. 09–CV–2189, 2010 WL 5093101, at *2 (M.D.Pa. Dec. 8, 2010)). In reviewing a facial attack on the Court's subject matter jurisdiction, the court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Machon v. Pennsylvania Dep't of Pub. Welfare*, 847 F. Supp. 2d 734, 743 (E.D. Pa. 2012) (quoting *Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir.2000)).

B.    Plaintiffs Lack Standing

Plaintiffs' Amended Complaint must also be dismissed because they continue to lack standing to bring these claims under any theory.

As discussed in Defendants' initial Motion to Dismiss, for a plaintiff to have standing under Article III, they must allege an injury in fact, fairly traceable to challenged conduct, which is likely to be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Laidlaw*

*Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). To establish an injury in fact, a plaintiff must show that "he or she suffered an invasion of a legally protected interest," that the injury is both "concrete and particularized," and that "his or her injury is actual or imminent, not conjectural or hypothetical." *Mielo v. Steak 'n Shake Operations*, 897 F.3d 467, 478 (3d Cir. 2018) (quotations omitted).  It is not enough for a plaintiff to claim "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992)).

In this case, Plaintiffs assert standing based on the exact type of generalized harm barred by *Lance*.  Plaintiffs allege that "Defendants' failure to conduct certification, validation, and L&A testing compromises election reliability…" and that, similarly to their initial Complaint, "Defendants' non-compliance deprives Plaintiffs of constitutional rights by obstructing lawful election oversight and barring access to fair processes." *See* Amended Complaint at 3.

These allegations are insufficient to confer standing because Plaintiffs have not shown particularized harm or concrete injury.

### 1. Plaintiffs' Claimed Harm is Not Concrete and Particularized

First, Plaintiffs fail to show concrete or particularized claimed harm because they appear to assert an Equal Protection claim on behalf of all voters.

For a claim to be concrete and particularized, a voter must "allege facts showing disadvantage to themselves as individuals." *See Gill v. Whitford*, 585 U.S. 48, 65-67 (2018). This limit applies with equal force to voting rights cases. *See Lujan*, 504 U.S. at 576 ("[T]here is absolutely no basis for making the Article III inquiry turn on the source of the asserted right.").

In the context of Equal Protection claims regarding the conduct of elections, a plaintiff must be able to show that the challenged action made their vote less valuable compared to those of some other group. *See Gill*, 585 U.S. at 65-68; *see also Bognet v. Sec'y Commonwealth of Pennsylvania*, 980 F.3d 336, 356-57 (3d Cir. 2020) (citing multiple cases), *cert. granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S.Ct. 2508, 209 L.Ed.2d 544 (2021). The key inquiry under the Equal Protection Clause is whether some "invidious classification" has been made, such that "the favored group has full voting strength and the groups not in favor have their votes discounted[.]" *Bognet*, 980 F.3d at 359 (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 n. 29 (1964)).

For example, a voter living in an affected district may have standing to claim that their vote in particular has been devalued by an unlawful racial gerrymander, but they may not complain of gerrymandering broadly, relying on generalized harms to public interests such as "collective representation in the legislature." *See Gill*, 585 U.S. at 67-68.  In litigation over mail-in ballot requirements, the Third Circuit has stated that even if an unlawful act occurred and diluted valid votes, the affected voters would not suffer a particularized harm adequate to confer standing for an Equal Protection claim if the dilution occurred in an undifferentiated manner, not impacting particular groups of voters.  *Bognet*, 980 F.3d at 356-57.

Plaintiffs in this case have not explained the precise basis for their Equal Protection claim at all, and they have not alleged that their votes were particularly disadvantaged as compared to some other group.  The bare-bones Amended Complaint offers nothing by way of allegations of particularized harm beyond the naked incantation that "[a]s poll watchers, representatives, and candidates, Plaintiffs have legal standing to demand compliance." Amended Complaint at 5. These allegations are precisely the sort of "generally available grievance about government—

claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large," that are insufficient to confer standing. *Lance*, 549 U.S. at 439.

In its ruling dismissing Plaintiff's initial Complaint in this action, this Court held:

> Plaintiffs assert they have standing to challenge Defendants' use of election machines that they have alleged are not tested, certified, or operated in compliance with federal law: (1) as voters, (2) because they have each previously been and currently are "certified poll watcher[s]" and "authorized representative[s]" for candidates in subject elections, and (3) because Plaintiff Joy Schwartz was a Republican candidate for Delaware County Council in May and November 2023. ECF No. 12 at 6-7. For the reasons that follow, such allegations are not sufficient to establish standing.

(Memorandum Op. at 5, Sept. 9, 2024, ECF No. 21)

The Amended Complaint contains no new factual allegations that address the deficiencies of the original Complaint regarding standing. On the contrary, it merely restates the same legally insufficient standing-related allegations from the original Complaint. As such, the Amended Complaint must also be dismissed for lack of standing.

2.    Plaintiffs Have Not Identified Any Actual or Imminent Harm

Beyond the fact that Plaintiffs allege only a generalized theory of claimed harm that affects all voters, Plaintiffs also fail to identify any actual or imminent harm sufficient to confer standing.

The Supreme Court has emphasized that to constitute an injury in fact, a threatened injury must be "certainly impending" and not merely "possible". *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The Supreme Court has cautioned that courts should be particularly reluctant to endorse standing theories resting on speculation about acts—especially unlawful acts—of independent actors. *Id.* at 414; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105–

06 & 106 n.7 (1983). In the elections context, speculation based on particular outcomes of votes cast is not sufficient to meet this requirement. *Bognet*, 980 F. 3d at 361-62.

The harm claimed by Plaintiffs in this case is purely speculative.  They have not alleged that their votes were actually devalued, or that they were in any other way disadvantaged; they merely complain that they "face obstructions" due to their various unfounded grievances regarding the lawful election process. Amended Complaint at ¶ 3.  Plaintiffs also assert that Plaintiff Schwartz has been specifically harmed by "Delaware County's failures jeopardize her right to a fair election as a candidate, compromising her trust in the election process." Amended Complaint at 3. Yet Plaintiffs have no allegation or fact-based pleading that the vote count in that election was in any fashion inaccurate or manipulated.  In fact, Delaware County performed several precinct-level recounts in that election which confirmed the original vote totals.  *See In re Edward Deisher, et al.*, No. CV-2023-009601 (C.P. Del., filed Nov. 14, 2023); *In re Tuesday, November 7, 2023 General Election Petition Requesting A Recount/Recanvass for Supervisor's Race in Edgmont Township 1st and 2nd Precincts*, No. CV-2023-009706 (C.P. Del., filed Nov. 14, 2023); *In re Petition to Open Ballot Box of Glenolden Borough*, Case No. CV-2023-009780 (C.P. Del., filed Nov. 14, 2023); *see also Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) ("Courts may take judicial notice of public records, including "publicly available records and transcripts from judicial proceedings. In particular, publicly available records from other judicial proceedings may be judicially noticed in the context of a motion to dismiss."). Further, "compromised trust" is simply another way of asserting, as in Plaintiffs' initial complaint, that Plaintiffs have no guarantees that some possible harm did not occur.

Plaintiffs assert similar claims regarding Plaintiff Robert Mancini, claiming that, "Delaware County's non-compliant processes create cybersecurity risks, obstructing his work in

election transparency." Amended Complaint at 3. Plaintiffs do not even attempt to allege that these cybersecurity risks could impact Mancini's right to vote. Similar claims from plaintiffs alleging that cybersecurity risks could deprive them of their right to vote have been dismissed. *See Gunter v. Myers,* No. 23-35124, 2024 WL 1405387, at *1 (9th Cir. Apr. 2, 2024) (affirming dismissal for lack of standing, finding plaintiffs' claim that a hacker could deprive them of their votes in the future too speculative and conjectural); *Zigmantanis v. Hemphill,* No. 22-cv-2872, 2023 WL 9521867, at *4 (D.S.C. Aug. 17, 2023) (finding plaintiffs' allegations that South Carolina's voting system is susceptible to hacking and foreign interference fail to demonstrate that they suffered an injury in fact because their alleged injuries are speculative), *report and recommendation adopted,* 2024 WL 63664 (D.S.C. Jan. 5, 2024).

Plaintiffs make another attempt to manufacture standing by claiming that Plaintiffs Gregory Stenstrom and Leah Hoopes "face obstructions to performing oversight due to unverified voting systems, directly impacting their statutory roles." Amended Complaint at 3. Parsing Plaintiffs' Amended Complaint, Plaintiffs base this allegation on two state law provisions, 25 P.S. § 2650 and 25 P.S. § 2687. Neither statute grants Plaintiffs standing to sue, either in this jurisdiction or elsewhere. State courts have dismissed attempts to create watchers' rights not expressly provided in the Election Code, as "the worst sort of judicial activism," which would be "a clear usurpation of the legislative function" *See Trump v. Philadelphia Cnty. Bd. of Elections*, 241 A.3d 120 (Pa. Commw. Ct. 2020) (denying petition for a court order directing Board of Elections to permit representatives of a campaign to remain in satellite election offices as watchers.)

These supposed harms do not allege any concrete facts and instead resort to vague, general, and attenuated claims of harm. Plaintiffs have no basis for standing and the Amended Complaint should be dismissed.

C.      This Court Lacks Subject Matter Jurisdiction

Beyond the continued facial pleading deficiency in the Amended Complaint, the Amended Complaint should be dismissed because this Court still lacks subject matter jurisdiction, as there is no federal question pending before it.

Under 28 U.S.C. § 1331, this Court is vested with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." A case arises under federal law, within the meaning of 28 U.S.C. § 1331, if "a well-pleaded complaint establishes that either federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).

Here, Plaintiffs assert, with no justification, that "this Court has jurisdiction under 52 USC 21081 and 28 USC § 1331." *See* Amended Complaint at 1.

As discussed below, this Court lacks subject matter jurisdiction because none of the statutes cited in Plaintiffs' Complaint creates a private right of action. Moreover, there is no substantial question of federal law, as the voting machines at issue are approved by the Secretary of the Commonwealth as safe, secure, and reliable.

1.      The Help America Vote Act Does Not Authorize a Private Right of Action

Although Plaintiffs have, once again, failed to assert a cause of action, they continue to assert that this Court has subject matter jurisdiction because Defendants violated HAVA. Even construing the pleading in the light most favorable to the Plaintiff, this theory fails, because

HAVA still does not authorize a private right of action. Plaintiffs' Amended Complaint makes no attempt to address this fatal flaw.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create . . . a private right [and] and private remedy." *Id.* "By its text," HAVA "only allows enforcement via attorney general suits or administrative complaint." *Am. Civil Rts. Union v. Philadelphia City Comm'rs.*, 872 F.3d 175, 184–85 (3d Cir. 2017); *see also Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th  Cir. 2019).  In fact, HAVA's text is explicit that "[t]he Attorney General may bring a civil action against any State or jurisdiction . . . to carry out the uniform and nondiscriminatory election technology and administration requirements under [52 U.S.C. §] 21081." 52 U.S.C. § 21111.

Plaintiffs' claim, which they purport arises from 52 U.S.C. § 21081, fails because Congress has not authorized private plaintiffs to bring such claims.  HAVA is explicit that such claims may only be brought by the Attorney General if the Attorney General determines that a jurisdiction has failed to carry out uniform and nondiscriminatory election technology and administration requirements as mandated by 52 U.S.C. § 21081.  *See* 52 U.S.C. § 21111.

Because HAVA does not authorize this action, it cannot be the basis for jurisdiction.

2.    Plaintiffs Do Not Raise Any Substantial Question of Federal Law

Because Plaintiffs have not shown any of the statutes cited create a cause of action for them against the Defendants, Plaintiffs must show that their Complaint raises substantial questions of federal law, and have failed to do so.

In the "very rare cases" where a federal court "may find federal question jurisdiction in the absence of a federal private right of action," the analysis turns on whether a claim raises "a

11

stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Baum v. Keystone Mercy Health Plan*, 826 F. Supp.2d 718, 720-21 (E.D. Pa. Oct. 2011) (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005)).

Parsing the Amended Complaint, Plaintiffs appear to allege that the Defendants have violated state law by using voting machines that were not properly certified by the Secretary of the Commonwealth.  Plaintiffs assert that "[t]he use of non-certified voting systems, as alleged in Delaware County, violates 52 U.S.C. § 21081(a)(5) and presents a significant risk to election validity." *See* Amended Complaint at 18. Plaintiffs also allege that "Defendants' failure to conduct certification, validation, and L&A testing compromises election reliability, violating 52 USC [sic] 21081(a)(5)." *See id.* at 1.

These claims are insufficient for federal question jurisdiction because Congress has already delegated authority for testing and approval of the voting machines to the Secretary of the Commonwealth, and the Secretary (and not the Defendants) has authority to certify such machines as compliant with federal law.  HAVA delegates implementation of its provisions to the states.  *See* 52 U.S.C. § 21085 ("The specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State.").  In Pennsylvania, the General Assembly has vested that power in the Secretary of the Commonwealth, and the Pennsylvania Election Code provides for the Secretary to examine voting machines and certify them for use in elections.  *See generally* 25 P.S. § 3031.5.   If any voting machine is reexamined prior to an election and it appears that it "can no longer be used safely by voters at elections," the Secretary may revoke approval of the system.  *See* 25 P.S. § 3031.5(c).  The Election Code also

sets forth the requirements for pre-election Logic and Accuracy Testing for voting machines so that the "reexamination" called for in the statute is done in accordance with federal law.  *See* 25 P.S. § 3031.10.

In that context, then, there is no "federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," because the specific implementation of HAVA in Pennsylvania is performed according to the Election Code, as dictated by 52 U.S.C. § 21085. Thus, any claim that the Defendants have not complied with the specific implementation of HAVA, in this context, is ultimately question of whether the Defendants have complied with the Election Code procedures for implementing HAVA, including error rate testing, and whether the Secretary of the Commonwealth has properly approved the Defendants' voting machines for use in Pennsylvania elections.  This is a question of state law, *see* 25 P.S. § 3031.1 *et seq.*, and cannot be the basis for federal question jurisdiction.

Without any sufficient basis for subject matter jurisdiction under federal law, the Amended Complaint should be dismissed.

D.  Plaintiffs Fail to State a Claim in Compliance with the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 8(a) requires a short and plain statement of the claim showing that the pleader is entitled to relief.  The Complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bakkali v. Walmart, Inc.*, 2020 WL 5517350, at *2 (E.D. Pa. Sept. 14, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Here, Plaintiffs do not meet the *Iqbal* standard, as they do not recite the elements of a cause of action and connect those elements back to the facts alleged.  Instead, the Amended Complaint is a barebones, bulleted mix of various legal conclusions regarding Plaintiffs' alleged standing, their interpretations of federal law, and their grievances against the Defendants. It is impossible to say that Plaintiffs have factually supported their causes of action when they have not provided anything but conclusory allegations and cobbled-together, unsupported documents disguised as exhibits. This alone is sufficient for dismissal.

As to Defendant James Allen, Plaintiffs do not allege any claims pertaining directly to him. Allen has merely been added to the caption and included in a bulleted list of defendants as "Director of Elections, responsible for compliance with election standards." Amended Complaint at 2. While Plaintiffs cite his statements, they fail to allege that he is liable for any misconduct, let alone any allegations that provide a reasonable basis to infer that Allen is actually liable for misconduct. *Iqbal*, 556 U.S. at 678. Therefore, any claims as to James Allen must be dismissed.

E.      Further Amendment Should Be Denied and the Complaint Dismissed with Prejudice

In the event this Court grants this Motion and dismisses the Amended Complaint, the dismissal should be with prejudice, as the nature of the theories noted above mean any amendment would be futile and it is plainly unlikely that plaintiffs will be able to cure their standing problem, if permitted to file a second amended complaint.

Under Fed. R. Civ. P. 15, plaintiffs may be given leave to amend their Complaint in response to a motion to dismiss unless amendment would be futile. *Winans v. Cox Automotive, Inc.*, 669 F. Supp.3d 394, 404 (E.D. Pa. 2023).  Futility means "that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *See id.* While dismissal for lack of standing should generally be without prejudice, "repeated failure to cure deficiencies in the

complaint is a basis for dismissal with prejudice." *Mullen v. Ashirward Hosp., LLC*, No. 2:23-CV-01277, 2024 WL 936322, at *10 (W.D. Pa. Mar. 5, 2024); *First Annapolis Bancorp, Inc. v. United States*, 109 Fed. Cl. 646, 649 (2013) ("a dismissal with prejudice is ... appropriate ... where it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem.")

Here, yet another amendment would be futile because Plaintiffs' lack of standing and the lack of subject matter jurisdiction are, in this case, incurable defects.  These are not mere pleading deficiencies, curable by amendment, but instead remain substantive problems with the nature of Plaintiffs' claims themselves, meaning that any additional amendment could not cure them.  Accordingly, the Defendants request dismissal of the Amended Complaint with prejudice.

## IV.    CONCLUSION

Based on the foregoing, Delaware County, the Delaware County Board of Elections, and James Allen respectfully request that this Court dismiss Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

Dated: October 18, 2024                                **DUANE MORRIS LLP**

By: */s/ J. Manly Parks*
J. Manly Parks (74647)
Nicholas M. Centrella, Jr. (326127)
Brian A. Kennedy (334441)
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone: +1 215 979 1000
Fax: +1 215 979 1020

*Attorneys for Delaware County, the Delaware County Board of Elections, and James Allen*